**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ANNA ROGERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION 12-0019-WS-B** |
| | ) |
| **THE HARTFORD LIFE AND ACCIDENT** | ) |
| **INSURANCE COMPANY,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This action, which was recently reassigned to the undersigned's docket, comes before the Court on defendant Hartford Life and Accident Insurance Company's Motion to Dismiss (doc. 3).  The Motion has been briefed and is ripe for disposition.

**I.     Relevant Background.**

Plaintiff, Anna Rogers, initiated this action by filing a Complaint against The Hartford Life and Accident Insurance Company ("Hartford") and seven fictitious defendants in the Circuit Court of Mobile County, Alabama.  Hartford removed the case to this District Court, and filed a Motion to Dismiss shortly thereafter.[1]

---

[1]     In the Notice of Removal (doc. 1), Hartford predicated federal jurisdiction on the diversity provisions of 28 U.S.C. § 1332.  "For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010).  Clearly, there is complete diversity, inasmuch as Rogers is an Alabama citizen and Hartford is a Delaware corporation with its principal place of business in Connecticut.  (The citizenship of fictitious defendants is not material for removal purposes, pursuant to 28 U.S.C. § 1441(a).)  As for the amount in controversy, the Complaint reflects that Rogers claims $51,000 in unpaid insurance benefits, plus compensatory damages for "extreme emotional distress over the actions of the Defendant," plus compensatory damages for unspecified "financial loss," plus punitive damages for fraudulent and other tortious conduct.  Where, as here, the plaintiff made an unspecified demand for damages in state court, the "removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the … jurisdictional requirement."  *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th (Continued)

The Complaint rests on the following factual allegations:[2]  Effective April 1, 2006, Rogers purchased a contract of accidental death and dismemberment ("AD&D") insurance from Hartford, providing $51,000 in family coverage.  (Complaint, ¶ 4 & Exh. A.)  In July 2010, plaintiff's husband, Lummie Rogers ("Mr. Rogers"), sustained severe pulmonary damage from smoke inhalation when the couple's home caught fire due to faulty wiring.  His medical condition deteriorated thereafter, and Mr. Rogers died from pneumonia and pulmonary decompensation on April 3, 2011.  (*Id.*, Exh. C.)  Rogers first made a claim on the AD&D Policy in fall 2010 for "Dependent Accident Hospital Income Benefits."  By letter dated December 6, 2010, however, Hartford Claim Analyst Dawn Libin notified Rogers that her claim was being denied because Mr. Rogers' "confinements did not exceed the waiting period of 7 days, nor was he admitted due to an Injury."  (*Id.*, Exh. I.)  The waiting-period justification for the denial was particularly galling because Rogers believed that her husband's 41-day hospital stay from September 8, 2010 to October 18, 2010 was more than adequate to satisfy the 7-day waiting period.[3]

---

Cir. 2010) (citation omitted).  A defendant may satisfy this requirement without additional evidence if it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum."  *Id.*  In performing this analysis, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."  *Id.* at 1062.  After careful review of the Complaint, the Court is satisfied that it is facially apparent that the $75,000 threshold is satisfied.  Rogers is claiming $51,000 in unpaid insurance benefits arising from the death of her spouse, and is also claiming additional damages for emotional distress and punitive damages based on defendant's allegedly fraudulent conduct in denying her insurance claim.  Viewing these allegations through the prism of the undersigned's experience and common sense, the pleadings themselves show by a preponderance of the evidence that the amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum.  Therefore, the Court finds that federal jurisdiction is proper here pursuant to 28 U.S.C. § 1332.

[2]      Almost none of these facts are stated in the pleading itself.  Instead, plaintiff's counsel forces opposing counsel and the Court to comb through 10 exhibits, consisting of a jumble of correspondence (submitted in no apparent order) spanning a nine-month period.  It ought not be this difficult or time-consuming to ascertain the factual allegations on which a plaintiff's claims are based.

[3]      On this point, the December 6 denial letter is puzzling.  Libin explained that in order to be compensable, it must be shown that "the Confinement exceeds 7 days."  (Doc. 1, Exh. I, at 2.)  Libin noted plaintiff's evidence that "Mr. Rogers was admitted to Springhill (Continued)

On January 18, 2011, plaintiff's counsel followed up with Hartford to appeal the ruling, specifically objecting to the waiting-period finding and submitting medical evidence that "the injury was due to house fire." (*Id.*, Exh. H.)  On February 14, 2011, Hartford Appeal Specialist Laurie Tubbs notified plaintiff's counsel in writing that Hartford was upholding the denial of hospital income benefits, because (in part) "[w]hile the third confinement from September 8, 2010 through October 18, 2010 would have exceeded the 7 day waiting period again there is no documentation in the hospital records that his confinement was the result of Injury as required." (*Id.*, Exh. G.)  Thus, the appeal determination did not rest on the waiting-period issue, at least as to the September-October hospital confinement.

Following Mr. Rogers' death, plaintiff submitted a claim for death benefits under the AD&D Policy on April 22, 2011.  (*Id.*, Exh. F.)  On June 5, 2011, Rogers supplemented her claim with medical records that she contends demonstrate that the fire and attendant smoke inhalation caused the pneumonia that killed Mr. Rogers.  (*Id.*, Exh. E.)[4]  On July 25, 2011, Hartford analyst Libin notified plaintiff's counsel that the claim for death benefits was being denied because "Mr. Roger's [*sic*] loss does not meet the Policy's definition of Injury."  (*Id.*, Exh. D.)  The July 25 letter reasoned that Mr. Rogers had a history of serious medical conditions dating back decades, that the death certificate did not set forth the manner of death, and that it is "questionable" whether the fire caused his pneumonia.  (*Id.*)  On September 13, 2011, plaintiff's counsel provided supplemental information to Hartford, in the form of a letter from Dr.

---

Medical Center on … September 8, 2010 to October 18, 2010.  His confinements did not exceed the seven day waiting period ….  Therefore, Dependent Accident Hospital Income Benefits are not payable."  (*Id.*)  That said, perhaps "waiting period" is a specially defined term, or the AD&D Policy establishes special rules for counting days of confinement.  In any event, Rogers was told (without further explanation) that her claim was being denied for failure to satisfy the waiting period requirement.

[4]      On July 7, 2011, Hartford employee Tubbs sent a letter to plaintiff's counsel stating that review of this new medical information was complete as to the previously-submitted claim for Dependent Accident Hospital Income Benefits.  The July 7 letter indicated that Hartford was continuing to deny that claim because "the evidence does not establish that this confinement [from September 8, 2010 to October 18, 2010] was due to an Injury independent of all other causes.  Moreover, the confinement occurred more than 30 days after the reported accident of July 23, 2010 and therefore no Accident Hospital Income Benefit is payable."  (*Id.*, Exh. J.)

Katherine M. Thomas of Covenant Hospital dated September 8, 2011.  Dr. Thomas's letter opined that Mr. Rogers had "suffered severe pulmonary damage from smoke inhalation" in the house fire and that "[i]f he hadn't been trapped in that fire, Mr. Rogers would still be alive."  (*Id.*, Exh. C.)  On September 26, 2011, Hartford employee Tubbs sent another letter to plaintiff's counsel stating that upon review of all information, including the Dr. Thomas letter, Hartford's denial of Rogers' claim for benefits was unchanged.  (*Id.*, Exh. B.)

In addition to appending the correspondence trail, the Complaint includes conclusory allegations that Hartford continues to deny Rogers insurance benefits "with no reasonable basis of denial and offering patently false statements as the alleged basis of denial.  The Defendant engages in a pattern and practice of this conduct."  (Complaint, ¶ 7.)  The Complaint further alleges, again without elaboration, that Hartford "negligently and/or wantonly trained, hired and/or supervised its employees Tubbs and Libbin [*sic*]."  (*Id.*, ¶ 8.)

Pursuant to these allegations, the Complaint purports to assert state-law claims against Hartford for negligence (Count I), wantonness (Count II), breach of contract / bad faith breach of contract (Count III), fraud (Count IV), wantonness by fictitious defendants (Count V), negligence by fictitious defendants (Count VI),  respondeat superior / vicarious liability as to fictitious defendants (Count VII), and negligent failure to hire, train and/or supervise against Hartford (Count VIII).  Hartford has now moved to dismiss all claims other than Count III for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P.

## II.     Analysis.

### A.     *Legal Standard for Motion to Dismiss.*

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, "the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged … in the complaint as true."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009); *see also Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) ("In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (similar).

To withstand Rule 12(b)(6) scrutiny, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] their claims across the line from

conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. Rather, as the Eleventh Circuit has explained, *Twombly/Iqbal* principles require that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," whose allegations are "enough to raise a right to relief above the speculative level." *Speaker*, 623 F.3d at 1380 (citations omitted); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) ("A plaintiff must provide enough factual allegations, which are assumed to be true, to raise a right to relief above the speculative level.").

### B.   *Claims Against Fictitious Defendants (Counts V, VI, VII).*

As an initial matter, the Court notes that Rogers purports to bring causes of action for wantonness, negligence and respondeat superior / vicarious liability against certain unnamed persons or entities identified in the Complaint only as "Defendants 'A', 'B', 'C', 'D', 'E', 'F', and 'G'." (Complaint, ¶¶ 24, 26, 29.)

Fictitious party practice may be acceptable in Alabama state court, where Rogers initially filed the Complaint; however, the same cannot be said of federal court, where the Complaint is now pending. Indeed, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010); *see also CSX Transportation, Inc. v. United Transp. Union*, 2007 WL 1643172, *1 n.1 (11th Cir. June 7, 2007) ("the Federal Rules do not authorize suit against fictitious parties"); *Schambeau Properties, LP v. Waffle House, Inc.*, 2011 WL 6934817, *1 n.2 (S.D. Ala. Dec. 30, 2011) ("because fictitious party pleading is generally not permitted in federal court, and plaintiff has made no showing that any limited exception might apply here, all of Schambeau's claims against fictitious defendants are dismissed without prejudice"). In response to Hartford's argument that the claims against fictitious defendants should be dismissed pursuant to these principles, Rogers has neither shown that any limited exception might apply, nor identified any viable basis for maintaining such

claims at this time.  Accordingly, the Motion to Dismiss is **granted** as to Rogers' claims against fictitious defendants.  Counts V, VI and VII of the Complaint are **dismissed without prejudice**.

C.       *Negligent / Wanton Handling of Insurance Claim (Counts I, II).*

Counts I and II of the Complaint are barebones tort claims against Hartford for negligence and wantonness.  These claims are rooted in generic allegations that "[t]he above-described conduct constitutes negligence by Tort Feasor" and "[t]he above-described conduct constitutes wantonness by Tort feasor."  (Complaint, ¶¶ 12, 15.)  The purported "negligence" and "wantonness" is not specified in those causes of action; however, a fair reading of the Complaint is that plaintiff imputes negligence and wantonness to the manner in which Hartford processed and denied her claims for insurance benefits under the AD&D Policy.

The legal obstacle confronting Counts I and II is that the Alabama Supreme Court "has consistently refused to recognize a cause of action for the negligent handling of insurance claims, and it will not recognize a cause of action for alleged wanton handling of insurance claims." *Kervin v. Southern Guar. Ins. Co.*, 667 So.2d 704, 706 (Ala. 1995); *see also Hillery v. Allstate Indem. Co.*, 705 F. Supp.2d 1343, 1367 (S.D. Ala. 2010) (observing that "Alabama courts have steadfastly refused to recognize a cause of action for negligent or wanton handling of insurance claims," and that such a position "is conclusively supported by Alabama caselaw"); *State Farm Fire and Cas. Co. v. Agee*, 2009 WL 1441537, *6 (S.D. Ala. May 21, 2009) ("Alabama does not recognize a cause of action for negligent and wanton claim handling"); *Alverson v. Auto-Owners Ins. Co.*, 2007 WL 437601, *2 (S.D. Ala. Feb. 6, 2007) ("It is certainly true that Alabama does not recognize a claim against an insurance company for negligent handling of an insurance claim, instead limiting the insurer's exposure to a claim for bad faith.").  "This refusal to recognize causes of action for the negligent and wanton handling/adjusting of insurance claims has evolved principally because of the recognition that the insured is not left without a remedy inasmuch as the insurer can still be sued for breach of contract and, as well, for the tort of bad faith."  *St. John's Deliverance Temple v. Frontier Adjusters*, 2012 WL 629056, *10 (S.D. Ala. Feb. 27, 2012).

Although Hartford's Motion to Dismiss properly identifies this line of authority, Rogers does not offer any rejoinder.  On its face, the *Kervin* line of cases would preclude plaintiff from asserting Alabama claims of negligence and wantonness against Hartford based on its claims handling process and determinations.  There do not appear to be any exceptions or distinctions to

the rule in *Kervin* that might impinge its application here, and plaintiff has not suggested that any exist.  Accordingly, because Alabama courts do not recognize causes of action for negligent or wanton handling of insurance claims, and because Rogers has pleaded just such causes of action here, the Motion to Dismiss is **granted** as to Counts I and II.

> **D.   *Fraud Claim (Count IV).***

Next, the Court examines the parties' arguments concerning the fraud cause of action.  In Count IV of the Complaint, Rogers alleges that Hartford engaged in fraud by making false statements during the claims process.  Although plaintiff alludes to others in general terms, the only false statement identified in the pleading is the passage in Libin's letter of December 6, 2010, stating that Mr. Rogers' hospitalization from "September 8, 2010 to October 18, 2010 … did not exceed the seven day waiting period."  (Complaint, ¶ 21.)  The Complaint alleges that this purportedly fraudulent statement caused Rogers' damages, "as Plaintiff was forced to rely on the false statements to her detriment as she has still not been paid her benefits."  (*Id.*, ¶ 22.)

In the Motion to Dismiss, Hartford challenges the sufficiency of these allegations under the rule that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b), Fed.R.Civ.P.[5]  "The particularity requirement of Rule 9(b) is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."  *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, --- F.3d ----, 2012 WL 555200, *3 (11th Cir. Feb. 22, 2012) (citations and internal quotation marks omitted).  This objection is not well-taken.  On its face, the Complaint identifies the substance of the purportedly fraudulent statement, cites to the correspondence in which it was presented, and attaches a copy of said correspondence which recites the date and identifies the Hartford agent who wrote it.  Rule 9(b) requires nothing more.[6]  In this regard,

---

[5]       This particularity requirement is not enforced in a vacuum.  To the contrary, the Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate Rule 8 … and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading."  *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985).

[6]       Of course, to the extent that Rogers would base Count IV on other, unpleaded averments of fraud, Rule 9(b) forbids her from doing so.  In other words, because the Complaint only identifies a single statement that she characterizes as fraudulent, Count IV stands or falls on (Continued)

Hartford's assertion that "Plaintiff's Complaint does not identify the 'false statements' supposedly made [or] the identity of the person who made the statements" (doc. 3, at 8) is simply incorrect.

Nor does Hartford fare better by reasoning that any misrepresentation in the December 6 letter was ameliorated by a subsequent February 14 letter in which Hartford accurately characterized the AD&D Policy's waiting period. Even accepting Hartford's summary of the facts as true on this point, defendant is effectively asking the Court to turn a blind eye to a more than two-month period in which Rogers would have been laboring under the false impression (created by the December 6 letter) that benefits were unavailable because Mr. Rogers' 41-day hospital stay in fall 2010 did not satisfy the Policy's waiting-period requirement. Perhaps Rogers was damaged during that two-month period. Perhaps she was not. But the Court cannot agree as a matter of law that a defendant's act of setting the record straight to the plaintiff months after a fraudulent misrepresentation automatically, necessarily negates any fraud claim based on the earlier misrepresentation, where the plaintiff relied to her detriment on the earlier statement and was damaged in the interim as a proximate result of same. So the fact that Hartford may have notified Rogers of the true facts concerning the waiting period's application to her claim sometime after the alleged December 6 misrepresentation in no way strips Rogers of the ability to sue for damages on a fraud theory based on that earlier misrepresentation, to the extent that she incurred damages in the months before Hartford saw fit to correct its misstatement.[7]

---

that one statement. Absent timely amendment of the pleadings, plaintiff cannot bootstrap additional, unpleaded instances of alleged fraudulent statements into Count IV. To hold otherwise would be to run afoul of Rule 9(b) and well-settled Eleventh Circuit jurisprudence.

[7]    Also, Hartford protests that Rogers "could not have reasonably relied on" the December 6 letter's discussion of the waiting period because common sense informs us that 41 days is not less than 7 days. (Doc. 3, at 9 n.1.) This argument is not persuasive. The December 6 letter concerned the application of specific terms of art from an insurance policy, particularly the term "waiting period." The December 6 letter did not say that the September 8 – October 18 confinement lasted less than seven days in duration; rather, it said that this confinement was not sufficient to satisfy the AD&D Policy's "waiting period" requirement. It is not obvious why Rogers "could not have reasonably relied on" that statement by the insurer interpreting and applying its own policy language and terminology to a particular fact pattern, or why she cannot hold Hartford accountable for any damages resulting from that reliance.

In its reply brief, Hartford attacks Count IV from another angle, insisting that this claim is "nothing more than a breach of contract claim masquerading as a tort claim" and citing Alabama authority for the proposition that a defendant's mere failure to perform a contract does not support a cause of action in fraud.  (Doc. 11, at 2.)[8]  This argument mischaracterizes the nature and substance of Count IV.  Rogers does not equate Hartford's failure to pay contractually promised benefits to fraud; rather, in Count IV she accuses Hartford of making knowing misrepresentations to her regarding the Policy terms and their application to her claim for benefits.  Movant identifies no authority for the proposition that an insurer cannot be held liable on a fraud theory for misrepresenting to the insured the terms of the policy and the grounds for denial of a claim.  As such, the line of Alabama decisions holding that mere failure to perform a contract is a not a tort has no application here, because Rogers does not proceed on such a theory.

For all of these reasons, the Motion to Dismiss is **denied** as to Count IV.

### E.    *Claim for Negligent Hiring, Training and/or Supervision (Count VIII).*

Finally, Hartford moves for dismissal of Count VIII, in which Rogers purports to assert a cause of action for negligent failure to hire, train and/or supervise.  The only pertinent allegations in the Complaint are a conclusory statement that "Defendant Hartford negligently and/or wantonly trained, hired and/or supervised its employees Tubbs and Libbin [*sic*]" and that "[t]he above-described conduct constitutes negligent failure to hire, train and/or supervise the employees responsible for Plaintiff's damages."  (Complaint, ¶¶ 8, 32.)

Plaintiff is correct that Alabama courts recognize a cause of action against an employer for negligent hiring, training, supervision or retention of its employees.[9]  But she is not correct that a conclusory allegation of negligent hiring, training or supervision – without any

---

[8]        *See, e.g., Barber v. Business Products Center, Inc.*, 677 So.2d 223, 228 (Ala. 1996) ("mere failure to perform a contractual obligation is not a tort").

[9]        *See Jones Exp., Inc. v. Jackson*, --- So.2d ----, 2010 WL 3724744, *6 (Ala. Sept. 24, 2010) (discussing elements of "the tort of negligent hiring, retention, training, and supervision" under Alabama law); *Johnson v. Brunswick Riverview Club, Inc.*, 39 So.3d 132, 140 (Ala. 2009) (similar); *Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala. 2001) ("In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him.") (citations omitted).

accompanying facts that there was a pattern of abuse or that Hartford was otherwise on notice of propensities of its employees to engage in tortious behavior toward insureds through fraudulent statements or otherwise, much less that Hartford failed to take corrective action – is sufficient to buoy such a claim through the pleadings stage.  Courts routinely require more, even on Rule 12(b)(6) review, and dismiss such claims where the plaintiff has failed to allege a sufficient factual predicate.  *See Lawrence v. Christian Mission Center Inc. of Enterprise*, 780 F. Supp.2d 1209 (M.D. Ala. 2011) ("In order to state a claim for negligent supervision, a Plaintiff must allege (1) the employee committed a tort recognized under Alabama law; (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence; and (3) the employer failed to respond to this notice adequately."); *Mac v. Brooks*, 2011 WL 3794683, *3 (M.D. Ala. Aug. 25, 2011) ("the court is completely at a loss as to what facts Brooks relies on in her negligent or wanton hiring, supervision, training, or retention counterclaim, because she has not alleged any such facts"); *Cooper v. City of Starke, Fla.*, 2011 WL 1100142, *8 (M.D. Fla. Mar. 23, 2011) (dismissing without prejudice claims based on failure to train or supervise, where plaintiffs "do not offer any facts demonstrating how the training was inadequate or that the need for additional training was obvious," and reasoning that mere "general allegation" of a pattern of abuse is insufficient under *Twombly / Iqbal*); *Sparks v. Phillips & Cohen Associates, Ltd.*, 641 F. Supp.2d 1234, 1254 (S.D. Ala. 2008) ("a plaintiff bringing a claim of negligent supervision/training must show that the defendant either had actual knowledge of its employee's wrongful acts and did nothing about it, or that it would have known about the employee's wrongful acts had it exercised due and proper diligence").  In *Twombly / Iqbal* terms, Rogers' negligent hiring, training or supervision claim is conclusory and speculative (*i.e.*, she has not pleaded sufficient facts to nudge that claim across the line from the conceivable to the plausible).

In response, Rogers points out that at this early stage she does not have access to what Hartford did or did not know, or did or did not do, in training and supervising Tubbs and Libin. (Doc. 10, at 3.)  This argument fails, because Rogers is effectively admitting that she lacks a factual basis for this cause of action at this time.  Perhaps she can develop the necessary information to bolster such a claim through the discovery process and amend her pleadings later to interpose that cause of action.  What she cannot do, however, is bring a tort claim against her insurance company on a wing and a prayer in hopes that some day she will discover some facts

-10-

that might support it.  The Federal Rules of Civil Procedure do not countenance this kind of "shoot first, ask questions later" approach to pleading.

In light of the foregoing analysis, the Court finds that Count VIII in its present form fails Rule 12(b)(6) review because Rogers has not pleaded enough facts to state a claim for relief that is plausible on its face.  Accordingly, the Motion to Dismiss is **granted** as to Count VIII, which is **dismissed without prejudice**.

III.    **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.    Hartford's Motion to Dismiss (doc. 3) is **granted in part,** and **denied in part**;

2.    The Motion is **granted** as to Count I (negligence against Hartford), Count II (wantonness against Hartford), Counts V, VI and VII (claims against fictitious defendants) and Count VIII (negligent failure to hire, train and/or supervise against Hartford), and all of these claims are **dismissed without prejudice**;

3.    The Motion is **denied** with respect to Count IV (fraud);

4.    This action will proceed as to Counts III (breach of contract / bad faith breach of contract) and IV (fraud); and

5.    Hartford must file an answer to the Complaint on or before **March 29, 2012**.


DONE and ORDERED this 15th day of March, 2012.


                    s/ WILLIAM H. STEELE
                    CHIEF UNITED STATES DISTRICT JUDGE